UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

ELENA PALAU,                                    _____ Civ. _____

                        Plaintiff(s)            **COMPLAINT**
                                                **WITH JURY DEMAND**

        -against-

CRUNCH, LLC,

                        Defendant(s)

-----------------------------------------------------------------X


Plaintiff Elena Palau, by her attorneys, Law Office of Andrea Paparella, PLLC, upon personal knowledge as to herself and upon information and belief as to other matters, alleges as follows:


## NATURE OF THE ACTION

1.      This case is based upon allegation that Crunch, LLC ("Crunch") (1) violated the Federal Labor Standards Act § 207 et seq. ("FLSA")  and (2) the New York Labor Law § 190 et seq. ("NYLL"), by failing to pay Palau overtime premium for hours she worked more than forty hours per week; (3) violated Title I of the Americans with Disabilities Act of 1990, ("ADA"); (3) violated the Family and Medical Leave Act, 29 U.S.C. 2601 et seq. ("FMLA"); (5) violated the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq., ("NYSHRL"); and (6) violated the New York City Human Rights Law § 8-107 et seq., ("NYCHRL").

2.      Palau also alleges that Crunch unlawfully retaliated against her for complaining about her hours and pay and Crunch's failure to accommodate, in violation of § 215(a)(3) of the FLSA; § 215 of the NYLL; § 12203 of the ADA; § 296-7 of the NYSHRL; and § 801-7(7) of the NYCHRL.

## JURISDICTION AND VENUE

3.     This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because the claims are brought under federal statutes, the FLSA, FMLA and the ADA. This court has supplemental jurisdiction over the New York state law claims, brought under the NYLL, NYSHRL, and the NYCHRL because they are so related within this Court's original jurisdiction that they form part of the same case or controversy under Article II of the United States Constitution.

4.     Palau filed a timely Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), and brought this action within ninety days of receiving from the EEOC a Notice of Right to Sue a true and accurate copy of which is attached as Exhibit A.

5.     Venue is proper in this judicial district. Defendant conducts business in this judicial district and acts and/or omissions giving rise to the claims alleged took place in this judicial district.

## PARTIES

6.     Plaintiff Elena Palau is an adult individual currently residing at 250 West 24th Street, Apt. #6BW, New York, New York 10011.

7.     Palau was hired by Crunch as a Corporate Services Coordinator in New York on September 19, 2012. Crunch classified Palau as eligible for overtime pay after approval in this position.

8.     Crunch terminated Palau's employment on January 8, 2015.

9.     Crunch owns and operates a chain of gyms/health clubs in the United States and internationally.  It offers personal training services, Pilates classes, and fitness classes.  It is a private company.

10.     It is headquartered at 22 West 19th Street, Suite 3L, New York, New York 10011.

11.     Palau was employed between September 19, 2012 and January 8, 2015 at Crunch's corporate headquarters.

12.     Crunch is a covered employer within the meaning of the FLSA, NYLL, ADA, NYSHRL, and NYCHRL and has employed Plaintiff.

13.     Upon information and belief, at all relevant times, Crunch's annual revenue was not less than $1 million and operates close to 50 gyms nationwide.

## FACTS

14.     At all relevant times, Crunch operated a business which owned and operated a chain of gyms/health clubs in the United States and internationally.

15.     Consistent with its policies and patterns or practices described herein, Defendant harmed Palau as follows:

## I.     Crunch Failed To Compensate Palau For Hours Worked Over 40 Per Week In Violation Of The FSLA and NYLL.

16. Palau first became employed by Crunch on September 19, 2012 as a Corporate Services Coordinator in the New York region.  Crunch paid Palau on an hourly basis and classified her as eligible to be paid at a rate of one and one-half times her regular rate of pay for hours she worked more that forty per week ("overtime premium pay") after approval by a supervisor.

17.     Palau's primary job function was servicing corporate sales accounts and corporate membership renewals.

18.     Palau's work was performed in the normal course of Crunch's business.

19.     Palau's duties did not include managerial responsibilities.

20.     Palau's primary job function did not require the exercise of independent judgment.

21.     Palau was an hourly employee of Crunch.  Her base salary started at approximately $19.83 per hour with the possibility for sales commission for corporate membership renewals at $10.00 per employee renewal.

22.     The week of January 21, 2013 through January 25, 2013, Palau worked 1.36 hours of uncompensated overtime at Crunch.

23.     The week of February 4, 2013 through February 8, 2013, Palau worked 2.76 hours of uncompensated overtime at Crunch.

24.     The week of March 4, 2013 through March 8, 2013, Palau worked 1.18 hours of uncompensated overtime at Crunch.

25.     The week of March 11, 2013 through March 15, 2013, Palau worked .5 hours of uncompensated overtime at Crunch.

26.     The week of March 18, 2013 through March 22, 2013, Palau worked 7.75 hours of uncompensated overtime at Crunch.

27.     The week of March 25, 2013 through March 31, 2013, Palau worked 4.84 hours of uncompensated overtime at Crunch.

28.     The week of April 15, 2013 through April 19, 2013, Palau worked 4.18 hours of uncompensated overtime at Crunch.

29.     The week of April 22, 2013 through April 26, 2013, Palau worked 2.67 hours of uncompensated overtime at Crunch.

30.     The week of April 29, 2013 through May 3, 2013, Palau worked 2.1 hours of uncompensated overtime at Crunch.

31.     The week of May 6, 2013 through May 10, 2013, Palau worked 1.5 hours of uncompensated overtime at Crunch.

32.     The week of May 13, 2013 through May 17, 2013, Palau worked 1.75 hours of uncompensated overtime at Crunch.

33.     The week of September 30, 2013 through October 5, 2013, Palau worked .83 hours of uncompensated overtime at Crunch.

34.     The week of October 7, 2013 through October 11, 2013, Palau worked .67 hours of uncompensated overtime at Crunch.

35.     The week of October 14, 2013 through October 18, 2013, Palau worked 3.00 hours of uncompensated overtime at Crunch.

36.     The week of October 21, 2013 through October 25, 2013, Palau worked 1.08 hours of uncompensated overtime at Crunch.

37.     The week of November 18, 2013 through November 22, 2013, Palau worked 1.5 hours of uncompensated overtime at Crunch.

38.     The week of December 9, 2013 through December 15, 2013, Palau worked .75 hours of uncompensated overtime at Crunch.

39.     The week of December 30, 2013 through January 5, 2014, Palau worked 3.5 hours of uncompensated overtime at Crunch.

40.     The week of January 6, 2014 through January 10, 2014, Palau worked 3.25 hours of uncompensated overtime at Crunch.

41.     The week of January 13, 2014 through January 17, 2014, Palau worked 1.25 hours of uncompensated overtime at Crunch.

42.     The week of January 20, 2014 through January 24, 2014, Palau worked 1.5 hours of uncompensated overtime at Crunch.

43.     The week of January 27, 2014 through January 31, 2014, Palau worked 3.5 hours of uncompensated overtime at Crunch.

44.     The week of February 10, 2014 through February 15, 2014, Palau worked .5 hours of uncompensated overtime at Crunch.

45.     The week of February 17, 2014 through February 21, 2014, Palau worked 3.42 hours of uncompensated overtime at Crunch.

46.     The week of February 24, 2014 through February 28, 2014, Palau worked 2.00 hours of uncompensated overtime at Crunch.

47.     The week of March 3, 2014 through March 7, 2014, Palau worked 1.5 hours of uncompensated overtime at Crunch.

48.     The week of March 10, 2014 through March 15, 2014, Palau worked 1.00 hours of uncompensated overtime at Crunch.

49.     The week of March 31, 2014 through April 4, 2014, Palau worked 3.5 hours of uncompensated overtime at Crunch.

50.     The week of April 14, 2014 through April 18, 2014, Palau worked 2.00 hours of uncompensated overtime at Crunch.

51.    The week of April 21, 2014 through April 25, 2014, Palau worked 2.00 hours of uncompensated overtime at Crunch.

52.    The week of April 28, 2014 through May 2, 2014, Palau worked 3.5 hours of uncompensated overtime at Crunch.

53.    The week of May 19, 2014 through May 23, 2014, Palau worked 2.00 hours of uncompensated overtime at Crunch.

54.    The week of May 26, 2014 through May 31, 2014, Palau worked 2.00 hours of uncompensated overtime at Crunch.

55.    The week of June 2, 2014 through June 6, 2014, Palau worked 3.00 hours of uncompensated overtime at Crunch.

56.    The week of June 9, 2014 through June 15, 2014, Palau worked 1.00 hours of uncompensated overtime at Crunch.

57.    The week of June 30, 2014 through July 4, 2014, Palau worked 2.00 hours of uncompensated overtime at Crunch.

58.    The week of July 7, 2014 through July 11, 2014, Palau worked 2.5 hours of uncompensated overtime at Crunch.

59.    The week of July 21, 2014 through July 25, 2014, Palau worked 1.00 hours of uncompensated overtime at Crunch.

60.    The week of August 4, 2014 through August 8, 2014, Palau worked 2.00 hours of uncompensated overtime at Crunch.

61.    The week of August 11, 2014 through August 15, 2014, Palau worked 2.00 hours of uncompensated overtime at Crunch.

62.     The week of August 18, 2014 through August 22, 2014, Palau worked 12.75 hours of uncompensated overtime at Crunch.

63.     The week of September 15, 2014 through September 19, 2014, Palau worked .5 hours (As approved by Toni - 1.00 hours overtime) of uncompensated overtime at Crunch.

64.     The week of September 22, 2014 through September 26, 2014, Palau worked .5 hours (As approved by Toni - 3.5 hours overtime) of uncompensated overtime at Crunch.

65.     The week of September 29, 2014 through October 3, 2014, Palau worked 7.5 hours of uncompensated overtime at Crunch.

66.     The week of October 27, 2014 through October 31, 2014, Palau worked .67 hours of uncompensated overtime at Crunch.

67.     The week of November 24, 2014 through November 30, 2014, Palau worked 1.75 hours of uncompensated overtime at Crunch.

68.     The week of January 5, 2015 through January 8, 2015, Palau worked 1.5 (As approved by Toni - 6.00) hours overtime hours of uncompensated overtime at Crunch.

## II.     Crunch Failed To Accommodate Palau's Disability Under The ADA, FMLA, NYSHRL, and the NYCHRL.

69. In or About October, 2013, Palau sustained an injury to her back.  Palau was treated by a chiropractor for this physical disability and provided notice to Crunch that she would be out of the office until November 4, 2013.  Palau's return date was extended by her chiropractor until November 6, 2013.  Palau's chiropractor conditioned the November 6, 2015 return date with the requirements that Palau be put on light duty, given breaks to stretch the injured area, be provided with an ergonomic chair or cushion for proper support, and not to remain seated for periods longer than 30 minutes at a time as an accommodation for her disability.

70.    Palau was not provided with a chair or cushion and was forced to provide her own.

71.    Palau was unable to take the necessary breaks due to the increased workload.

72.    Palau was publicly humiliated by her superior Toni Askinasi who verbally mocked Palau's injury, limitations, and necessary accommodations to co-workers.  Contemporaneous with Palau's purchase of her own chair to accommodate her disability, Ms. Askinasi humiliated her by stating to co-workers that Palau's back was injured because she was "getting too old."

### III.   By Increasing Palau's Workload Forcing Her To Work Overtime Hours And Fail To Take Her Medically Necessary Breaks Crunch Violated The FLSA and NYLL And Failed To Accommodate Under the ADA, FMLA, NYSHRL, and NYCHRL.

73.    In or about August, 2013, Palau was given more projects and tasks to complete, increasing her work load and requiring additional hours over her previous forty hours per week.

74.    During the time period of January 2013 through January 8, 2015, Palau was again given additional projects requiring Palau to further increase her hours worked and skip her medically required breaks to meet the new demand. Palau's workload also required that she remain sitting longer than the thirty minutes advised by her chiropractor. By the end of this time period, tasks assigned to Palau had doubled in number from Palau's original job responsibilities.

75.    Palau was instructed by her supervisors she was not permitted to work overtime premium pay hours during the relevant period.  Palau was instructed to only work during the regular eight hours she was scheduled to be clocked in. Palau was instructed that if additional time was necessary, she was to receive permission before working overtime premium pay hours. These instructions were in direct conflict with the amount of time required to complete the projects and tasks given to Palau by her supervisors.

76.     Palau continued to work outside of the time period in which she was clocked in, as it was necessary to complete the projects and tasks given to Palau by her supervisors. If Palau was unable to complete the assigned projects/tasks, she would be reprimanded by supervisors for problems with "time management."

77.     Palau was unable to take the breaks legally entitled to her and necessary for her back injury, due to her demanding and increased work load.

78.     Crunch failed to pay Palau any overtime premium pay.

79.     Throughout her employment at Crunch, Palau complained numerous times to her supervisors and peers about the number of hours that she worked and the pay she was receiving as a result. Contained within this complaint are only examples of Palau's complaints.

80.     Palau complained to her supervisor that the workload assigned to her required her to work overtime premium pay hours and skip breaks necessary to reasonably accommodate her disability.

81.     After multiple reprimands from her supervisor, combined with an increased workload, Palau's supervisors stated that Palau's need to work overtime premium pay hours was due to her time management inabilities rather than the workload Crunch gave her.

82.     Palau requested her supervisors allow her to obtain assistance from employees with a smaller workload multiple times. This request was generally denied.

83.     Again, in February 2014, Palau complained to Tony Askinasi, her direct supervisor at the time, about the fact that her workload required her to work overtime premium pay hours and did not allow for any time to take her necessary breaks.

84.     In February 2014, Palau complained to Kate Wogas, the supervisor of Ms. Askinasi, about the fact that her workload required her to work overtime premium pay hours and

did not allow for any time to take breaks required by her disability.  Ms. Wogas instructed Palau to keep detailed records of her workload and to take the required breaks.  Ms. Wogas stated that she would discuss the issue with the Vice President of Crunch and implied that the inability to take breaks, necessary for her disability, and work within non-overtime hours was the responsibility of Palau.

85.     In late February, 2014, Ms. Askinasi requested a meeting with Palau to reprimand her about problems with "time management."  A written document was signed by Ms. Askinasi to state that Palau had a "time management" problem and memorializing a work management plan. Palau signed the document, despite disagreeing with the "time management" language. Immediately after signing, Palau verbally stated that any overtime premium pay hours were due to her additional workload.

86.     Palau felt Ms. Askinasi's insistence to include the "time management" language was to preserve a terminable offense in writing and was pre-text for discriminating against her because of her disability and her requests for breaks as a reasonable accommodation.

87.     After the late February meeting, Palau's workload continued to be so demanding as to require work hours above forty per week.

88.     On or about June 5, 2014, Ms. Askinasi prepared a Performance/Disciplinary Action Form, accusing Palau of insubordination.  Palau refused to sign the document because she disagreed with the contents. Palau noted to Ms. Askinasi that there was a space to write her concerns on the document, and she intended to take some time to write a full response prior to signing.  Ms. Askinasi began to scream at Palau and pound her fists on the conference room table in an attempt to get Palau to sign the document immediately.

89.    On or about June 9, 2014, Palau submitted her response to the Performance/Disciplinary Action Form to Ms. Askinasi.   Following this response, Danny Granado, a supervisor of Ms. Askinasi, informed Palau that the response would be kept in her personnel file at Crunch.  After this interaction, other employees were temporarily allowed to assist Palau with her assignments, however this did not last and shortly thereafter it again became necessary for Palau to work overtime hours to maintain her workload.

90.    On or about October 14, 2014, Ms. Askinasi prepared a second Performance/Disciplinary Action Form, stating "unsatisfactory work quality."   Palau again insisted that she have time to prepare a response to the form, which she completed and returned shortly thereafter.

91.    On or about November 10, 2014, Mr. Granado and Ms. Askinasi requested a meeting with Palau and continued to inform Palau that she is having problems with "time management," above Palau's objections.

92.    On or about December 23, 2014, Palau was presented with a company bonus by Mike Neff, Kate Wogas and Toni Askinasi complimenting her for performing well.  During this time, Palau's workload had consistently required overtime hours and she had been consistently told she has a "time management" problem.

93.    In the beginning of January, 2015, a time that is customarily busy at Crunch, Palau's workload becames so burdensome that Palau was unable to take any necessary breaks for her past back injury.  Ms. Askinasi approved one hour of overtime work on or about January 7, 2015 due to the increase in workload.

94.    On January 8, 2015, Crunch terminated Palau's employment.  According to Mr. Granado, the termination was due to Palau's performance not improving at the rate the company

was expecting, seventeen days after receiving the bonus for performing well and three months after Palau won a sales competition for a trip to Las Vegas, Nevada.

95.     Upon information and belief, Crunch terminated Palau's employment because of her complaints.


# FIRST CLAIM
## (Violations Of The FLSA for Unpaid Overtime Premium Pay)

96.     Plaintiff realleges and incorporates all of the paragraphs in this Complaint.

97.     At all relevant times Crunch employed Plaintiff within the meaning of the FLSA.

98.     Upon information and belief, at all relevant times, Crunch has had gross annual revenues of over $1 million.

99.     Upon information and belief, Defendant has been, and continues to be, an "employer" engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendant has employed and/or continues to employ "employees" within the meaning of the FLSA.

100.    Defendant was required to pay Plaintiff no less than one and one-half times the regular rate at which Plaintiff's were employed for all hours worked in excess of forty hours in a work week pursuant to the overtime wage provisions set forth in the FLSA, 20 U.S.C. 207 § et seq.

101.    Due to the Defendant's violation of the FLSA, the Plaintiff is entitled to recover her unpaid overtime premium pay, liquidated damages as provided by the FLSA for overtime violations, attorneys' fees and costs, pre-judgment and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

102.    The foregoing conduct, as alleged, constitutes as willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

## SECOND CLAIM
### (Violation Of The NYLL For Unpaid Overtime Premium Pay)

103.    Plaintiff realleges and incorporates all of the paragraphs in this Complaint.

104.    At all relevant times, Plaintiff was employed by Crunch within the meaning of the NYLL, §§ 2 and 651.

105.    Defendant willfully violated Plaintiff's rights by failing to pay her overtime premium pay at rates of less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

106.    Due to Defendant's NYLL violations, Plaintiff is entitled to recover from Defendant her unpaid wages and overtime premium pay, liquidated damages, reasonable attorney's fees, and costs and disbursements of the action, pursuant to NYLL §§ 663(1), 198.

## THIRD CLAIM
### (Retaliation in Violation of the FLSA)

107.    Plaintiff realleges and incorporates all of the paragraphs in this Complaint.

108.    Defendant is an "employee" under § 215(a)(3) of the FLSA.

109.    Palau is an "employee" under § 215(a)(3) of the FLSA.

110.    Palau engaged in "protected activity" under § 215(a)(3) when she complained about her hours and pay.

111.    Upon information and belief, there is a causal link between Crunch terminating Palau's employment on January 8, 2015 and the assertion by Palau of her rights under the FLSA.

112.    The actions of Defendant are in violation of the anti-retaliation provisions of 29 U.S.C. § 215(a)(3).

113.    Additionally, § 704(a) of the 1964 Civil Rights Act makes it illegal for an employer to retaliate against any employee who has opposed any unlawful employment practice.

114.    Upon information and belief, Palau was unlawfully retaliated against for complaining about her hours and pay, in violation of 29 U.S.C. § 215(a)(3).

**FOURTH CLAIM**
**(Retaliation Under the NYLL)**

115.    Plaintiff realleges and incorporates all of the paragraphs in this Complaint.

116.    Palau engaged in "protected activity" under NYLL § 215(1) when she complained about her hours and pay.

117.    Upon information and belief, there is a causal link between Crunch terminating Palau's employment in January 8, 2015 and the assertion by Palau of her rights under the NYLL.

118.    There is a casual link between the adverse employment actions as described above and the assertion by Palau of her rights under the NYLL.

**FIFTH CLAIM**
**(Disability Discrimination in Violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq.)**

119.    Plaintiff realleges and incorporates all of the paragraphs in this Complaint.

120.    At the time Crunch failed to accommodate Plaintiff, and then terminated her employment, she suffered from four herniated discs and Piriformis Syndrome.

121.    Plaintiff's disability substantially limited, and currently limits a major life activity, working.

122.   Crunch regarded and perceived Plaintiff to be disabled.

123.   Plaintiff was at all times qualified for her position.

124.   Plaintiff was able to perform the essential functions of her job with reasonable accommodation.

125.   Plaintiff excelled at her job, prior to her disability and would have been able to continue to excel, if Crunch had reasonable accommodations for her, which she requested.

126.   Plaintiff needed to have reasonable accommodations to allow her to perform her essential duties and the accommodations she requested did not place an undue hardship on Crunch.

127.   Crunch discriminated against Plaintiff by failing to grant her accommodations, harassing her, and ultimately terminating her employment.

128.   Plaintiff has been unable, despite reasonable efforts, to find comparable employment.

129.   As a proximate result of Crunch's discrimination against Plaintiff on the basis of her disability, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

130.   As a further proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer impairment and damage to Plaintiff's good name and reputation by Crunch.

131.   As a further proximate result of Crunch's actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

132.   Crunch's conduct was outrageous and malicious; was intended to injure Plaintiff; and was done with reckless indifference to Plaintiff's protected civil rights, entitling Plaintiff to an award of punitive damages.

## SIXTH CLAIM
### (Retaliation Under The ADA)

133.    Plaintiff realleges and incorporates all of the paragraphs in this Complaint.

134.    Palau opposes Defendant's unlawful, discriminatory employment practices and engaged in protected activity under the ADA.

135.    As described above, Defendant's retaliated against Palau for having engaged in protected activity.

136.    Defendant's actions constitute discrimination and retaliation against Palau in violation of the ADA.

137.    As a result of Defendant's retaliation, Palau has suffered substantial damages, including but not limited to mental distress and lost ages and benefits, in an amount to be determined at trial.

## SEVENTH CLAIM
### (Violation Of The Family Medical Leave Act)

138.    Plaintiff realleges and incorporates all of the paragraphs in this Complaint.

139.    Palau is a female citizen of the United Stated and was an "employee" of Defendants within the meaning of 29 U.S.C.A. § 2611(2)(A) at all times relevant to this action.

140.    Crunch is an "employer" within the meaning of 29 U.S.C.A. § 2611(4)(A) at all times relevant to this action.

141.    Palau timely requested a medical leave from Defendant permitted under the FMLA.

142.    Crunch's interfered with Palau's rights under the FMLA, by among other things, retaliating against her for having taken leave, by harassing her and ultimately terminating her employment.

143.   As a proximate result of Crunch's discrimination against Palau on the basis of her exercise of rights under the FMLA, Palau has suffered and continues to suffer substantial losses, including bonuses, back pay and reinstatement or front pay in lieu of reinstatement, and other employment benefits.

144.   As a result of Crunch's unlawful conduct, they are also liable for liquidated damages, interest, and attorney's fees and cost.

**EIGHTH CLAIM**
**(Disability Discrimination Under The New York State Human Rights Law)**

145.   Plaintiff realleges and incorporates all of the paragraphs in this Complaint.

146.   At all relevant times, Palau was an "employee" for purposes of § 296 of the New York State Human Rights Law.

147.   Crunch is an "employer" for purposes of § 292 of the New York State Human Rights Law.

148.   By its actions detailed above, Crunch has unlawfully discriminated against Palau on the basis of her disability in violation of the New York State Human Rights Law.

149.   Upon information and belief, Crunch's conduct towards Palau constitutes willful discrimination.

150.   As a result of Crunch's unlawful conduct, Palau has suffered and continues to suffer substantial damages, including loss of bonus, back pay and reinstatement or front pay in lieu of reinstatement, emotional pain and mental anguish, in a amount as yet undetermined.

151.   As a result of Defendant's unlawful conduct, they are also liable for attorneys' fees and costs.

## NINTH CLAIM
### (Retaliation Under The New York State Human Rights Law)

152.   Plaintiff realleges and incorporates all of the paragraphs in this Complaint.

153.   Palau opposed Crunch's unlawful, discriminatory employment practices and engaged in protected activity under the New York State Human Rights Law.

154.   As described above, Crunch retaliated against Palau for having engaged in the protected activity.

155.   Crunch's actions constitute discrimination and retaliation against Palau in violation of the New York State Human Rights Law, § 296.

156.   As a result of Crunch's retaliation, Palau has suffered substantial damages, including but not limited to mental distress and lost wages and benefits, in an amount to be determined at trial.

## TENTH CLAIM
### (Disability Discrimination Under The New York City Human Rights Law, § 8-107(1)(a))

157.   Plaintiff realleges and incorporates all of the paragraphs in this Complaint.

158.   Palau is a "person" under the New York City Human Rights Law, § 8-102(1).

159.   Crunch is an "employer or employee or agent thereof" under the New York City Human Rights Law, § 8-102(5) and § 8-107(1)(a).

160.   By its actions detailed above, Crunch has unlawfully discriminated against Palau on the basis of her disability in violation of the New York City Human Rights Law.

161.   As a result of Crunch's unlawful conduct, Palau has suffered and continues to suffer substantial damages, including back pay and reinstatement or front pay in lieu of reinstatement,

other employment benefits, and damages for emotional pain, and mental anguish in amounts to be determined at trial.

162.   Crunch's discriminatory conduct was taken with reckless indifference to Palau's rights, entitling her to punitive damages under the New York City Human Rights Law.

163.   As a result of Crunch's unlawful conduct, it is also liable for attorneys' fees and costs.

## ELEVENTH CLAIM
### (Retaliation Under The New York City Human Rights Law, § 8-107(7))

164.   Plaintiff realleges and incorporates all of the paragraphs in this Complaint.

165.   Palau opposed Crunch's unlawful, discriminatory employment practices and engaged in protected activity under the New York City Human Rights Law.

166.   Crunch retaliated against Palau for having engaged in protected activity by, among other things, terminating Palau's employment for a pre-textual reason.

167.   Crunch's actions constitute retaliation against Palau in violation of the New York City Human Rights Law, § 8-107(7).

168.   As a result of Crunch's retaliation, Palau has suffered substantial damages, including but not limited to mental distress and lost wages and benefits, in an amount to be determined at trial.

169.   Upon information and belief, Crunch's retaliatory actions against Palau were taken with reckless indifference to Palau's rights, entitling her to punitive damages under the New York City Human Rights Law.

## TWELFTH CLAIM
### (Interference With Protected Rights Under The New York City Human Rights Law, § 8-107(19))

170.   Plaintiff realleges and incorporates all of the paragraphs in this Complaint.

171.   Crunch's actions set forth above violated § 8-107(19), which sets forth that:

> It shall be an unlawful discriminatory practice:  (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status of an person, to refuse to hire or employ of to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms conditions or privileges of employment.

## THIRTEENTH CLAIM
### (Aiding And Abetting Under The New York City Human Rights Law, § 8-107(6))

172.   Plaintiff realleges and incorporates all of the paragraphs in this Complaint.

173.   Crunch's actions set forth above violated § 8-107(6), which sets forth that:

> It shall be unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so.

## FOURTEENTH CLAIM
### (Defendant Crunch, LLC Is Liable Under The New York City Human Rights Law, § 8-107(13)(b))

174.   Plaintiff realleges and incorporates all of the paragraphs in this Complaint.

175.   By Toni Askinasi's actions set forth above, Defendant Crunch, LLC is liable under

§ 8-107(13)(b) which sets forth that:

> (1)     The employee or agent exercised managerial or supervisory responsibilities;

(2)     The Employer knew of the employee's or agents discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where the conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

(3)     The employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

176.    Ms. Askinasi is an "agent" of Defendant Crunch, LLC.

177.    Ms. Askinasi exercised managerial or supervisory responsibility with respect to Defendant Crunch, LLC.

178.    Defendant Crunch, LLC knew of Ms. Askinasi's discriminatory conduct, and acquiesced in such conduct and failed to take immediate and appropriate corrective action.

179.    Kate Wogas, Supervisor, was an employee and agent of Defendant Crunch, LLC.

180.    Ms. Wogas exercised managerial and supervisory responsibility for Defendant Crunch, LLC.

181.    Ms. Wogas knew of Ms. Askinasi's discriminatory conduct.

182.    Upon information and belief, Defendant Crunch, LLC did know of Ms. Askinasi's discriminatory conduct.

183.    Defendant Crunch, LLC should have known of Ms. Askinasi's discriminatory conduct.

184.    Defendant Crunch, LLC failed to exercise reasonable diligence to prevent the discriminatory conduct taken by Ms. Askinasi against Palau.

185.    Defendant Crunch, LLC is liable for Ms. Askinasi's actions and conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant the following relief:

    a.  A declaratory judgment that the practices complained of herein are unlawful under the NYLL and the FLSA;

    b.  An injunction against Defendant and its officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices policies and patterns set forth herein;

    c.  A judgment awarding Plaintiff her unpaid wages, including overtime premium pay;

    d.  A judgment declaring that Defendant's violations were willful;

    e.  An award of liquidated and/or punitive damages against Defendant as a result of Defendant's failure to pay overtime premium pay pursuant to 29 U.S.C. § 216 and the NYLL § 198;

    f.  Penalties and liquidated dames of 100% of the unpaid wages due to Plaintiff under the NYLL § 215 for retaliation against Plaintiff for complaining about Defendant's overtime violations;

    g.  An award of liquidated and/or punitive damages under the FLSA § 216(b) as well as back pay for Plaintiff based on Defendant's violations of the anti-retaliation provisions of § 215 of the FLSA;

    h.  An award of Plaintiff's actual damages under the ADA, FMLA, NYSHRL, and NYCHRL in an amount to be determined at trial for loss of wages, benefits, and

promotional opportunities, including an award of front pay compensating Plaintiff for loss of future salary and benefits;

i.  An award of damages in an amount to be determined at trial to compensate Plaintiff for mental anguish, humiliation, embarrassment, and emotional and physical injury;

j.  And award of punitive damages;

k.  And award of liquidated damages;

l.  An order enjoining Defendants from engaging in the wrongful practices alleged herein and to provide Plaintiff with a reasonable accommodation, if she is reinstated.

m.  An award of pre-judgment and post-judgment interest;

n.  An award of costs and expenses of this action together with reasonable attorney's and expert fees pursuant to 29 U.S.C. § 216 and NYLL § 663;

o.  Such other and further legal and equitable relief as this Court deems necessary, just and proper.

Dated: New York, New York
      August 10, 2016

Law Office of Andrea M. Paparella, PLLC

By: _____

Andrea M. Pararella
Siobhan Klassen
150 W. 28th Street, Suite 1603
New York, New York 10001-5304
Telephone: (212) 675-2523
Facsimile: (914) 462-3287
Email: ap@andreapaparella.com
      sk@andreapaparella.com

# EXHIBIT A

EEOC Form 161 (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To: Elena Palau
    250 W. 24th Street, Apt 6BW
    New York, NY 10011

From: New York District Office
      33 Whitehall Street
      5th Floor
      New York, NY 10004

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2016-00140 | Roxanne Zygmund, Investigator | (212) 336-3764 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X]  The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]  Other (briefly state)

## - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Kevin J. Berry*                          MAY 1 2 2016

Enclosures(s)                **Kevin J. Berry,**
                             **District Director**                    (Date Mailed)

cc:  Jason A. Zoldessy, Esq.
     Jackson Lewis, P.C.
     666 Third Avenue
     New York, NY 10017

     Andrea M. Paparella, Esq.
     LAW OFFICE OF ANDREA PAPARELLA, PLLC
     150 W. 28th Street, Suite 1603
     New York, NY 10001